ERVIN, Chief Justice
(dissenting).
This case involves a mandamus proceeding which is at issue on pleadings. It appears from the record before us the State Racing Commission in August, 1969 announced by resolution a 52-52 dog racing date plan, allocating 52 days of competitive racing and 52 noncompetitive days to each of south Florida’s four greyhound tracks. These tracks are: Biscayne Kennel Club in North Miami, Dade County; Flagler Kennel Club, Miami vicinity, Dade County; Miami Beach Kennel Club, Miami Beach, Dade County; and Hollywood Kennel Club, Hollywood, Broward County, Florida.
On the same date the Racing Commission ruled that each track would be given *679 52 competitive days and 52 noncompetitive days, it authorized Biscayne Kennel Club to commence its 52 noncompetitive days on September 3, 1969, to end November 1, 1969. The Racing Commission postponed the allocation of other specific dates of racing until September 12, 1969.
Thereafter, Biscayne and Flagler Kennel Clubs appealed the Racing Commission’s allocation of racing dates to the newly-created Department of Business Regulation (see § 16, Ch. 69-106, Laws of Fla. 1969). On October 23, 1969 the Board of Business Regulation reversed the allocation of racing dates made by the Racing Commission.
Under the Board’s reversal, Biscayne Kennel Club will continue to operate until December 31, 1969. Hollywood and Miami Beach Kennel Clubs will operate concurrently from January 1, 1970 through May 1, 1970. Flagler Kennel Club will operate from May 2, 1970 through August 31, 1970.
Under the 52-52 allocation plan of the Racing Commission, Biscayne Kennel Club closes its noncompetitive racing on November 1, 1969 and Hollywood Kennel Club is scheduled to open November 3, 1969 to continue until March 3, 1970. Under the Racing Commission’s plan, Hollywood Kennel Club would be the only south Florida track in operation from November 3, 1969 until January 2, 1970.
In its emergency request for an alternative writ of mandamus, Relator, the owner of Hollywood Kennel Club, asserts that it (along with Miami Beach Kennel Club) was not made a party to the appeal to the Board of Business Regulation and was further excluded from participating in the hearing on this appeal conducted by the Board on October 23, 1969. Relator contends it was entitled to be made a party to the appeal proceedings before the Board by virtue of the fact that the purpose of the appeal was to take away or reallocate from Relator and Miami Beach Kennel Club the noncompetitive racing dates allocated to them by the Racing Commission. Relator urges the reversal order of the Board of Business Regulation taking away the 52 noncompetitive days granted to Hollywood and Miami Beach Kennel Clubs is illegal, arbitrary, discriminatory, void, and constitutes a denial of due process and equal protection of the law in violation of the Constitution of Florida and the 14th Amendment to the United States Constitution. Relator alleges it has made all its plans to open the Hollywood track on November 3, 1969, pursuant to the dates allocated by the Racing Commission and that it will suffer irreparable injury and damage if the reversal order of the Board is allowed to stand. Relator requests we vacate the action of the Board and require the issuance to it of a license for the operation of its track from November 3, 1969 to March 3, 1970.
At the outset, I think it clear that the proper method for reviewing a decision of the State Racing Commission is by way of appeal to the Board of Business Regulation. Section 16(5), Chapter 69-106, transfers the State Racing Commission to the Department of Business Regulation and specifically assigns said Commission to the division of pari-mutuel wagering, one of. the five established divisions of the Department of Business Regulation. Section 16(1), Chapter 69-106, provides that the Board of Business Regulation, comprised of five members, shall be the head of the Department of Business Regulation. Section 16(3) provides, “any interested person may appeal an adverse decision by a division to the board of business regulation.” Thus Biscayne and Flagler Kennel Clubs had the untrammeled right to appeal the Racing Commission’s allocation of racing dates to the Board of Business Regulation, subject of course, to compliance with any procedural rules governing such an appeal.
With regard to procedural rules, Relator directs our attention to the fact that the Department of Business Regulation adopted the Appellate Rules of the District *680 Courts of the State of Florida, with certain necessary modifications, as an emergency appellate procedure governing proceedings before the Board of Business Regulation. I find this to be a fact for the purposes of this review. However, even in the absence of any such emergency rules, I think, as hereinafter explained, the appeal procedures would be essentially the same because of the minimum requirements imposed by Part II of the Administrative Procedure Act, F.S. Chapter 120, F.S.A.
Relative to the emergency procedure rules adopted by the Department, Relator contends the ten-day appeal period prescribed in the modified appellate rules was not complied with in the instant case and that this is a jurisdictional defect requiring the conclusion that the order of the Racing Commission be deemed final and conclusive. Based on the record before us, it should be noted that the decision of the Racing Commission designating the different racing dates was not fully rendered until September 12, 1969. The available record clearly reveals that the questioned appeals were filed within a ten-day period computed from September 12, 1969. I conclude therefore that Relator's contention of a jurisdictional defect attributable to the time of appealing the Racing Commission decision is not well taken.
I come now to the main thrust of Relator’s position. Relator asserts that the action of the Board in reversing the allocation of racing dates made by the Racing Commission is illegal, arbitrary, discriminatory, void, and constitutes a denial of due process and equal protection of the law. In actuality, the challenge against the Board’s reversal order can be reduced to two distinctive thrusts: (1) The Board was without authority to enter a determination affecting the interests of Relator without making said Relator a party to the proceedings on appeal and according it a chance to be heard; and (2), there was competent, substantial evidence in the record to support the Racing Commission’s allocation of racing dates and the Board, by reversing and departing from the allocation plan of the Racing Commission, acted arbitrarily, beyond its discretion, and without compliance with essential requirements of law. I agree that either of these contentions if established by the record will support an action for mandamus. See State ex rel. Roberts v. Knox (1943), 153 Fla. 265, 14 So.2d 262; State ex rel. Weathers v. Davis (1940), 143 Fla. 250, 196 So. 487. However, the particular reason or ground established to support mandamus is extremely crucial since it will determine the particular scope or nature of the relief to be accorded.
I pass now ro the merits of the above enumerated contentions of Relator. With reference to the failure to make Relator a party appellee to the appeal, it appears the fault lies primarily with the Board. It had a duty (see Fla.App.Rule 3.11, 32 F.S.A. and F.S. § 120.23, F.S.A.) to make Relator, a potential aggrieved party, an appellee. The appellants attempted to supply the defect by having brought to the attention of Relator their appeal efforts and contentions by transmitting to it their appeal briefs. Apparently the Board considered that only the Racing Commission in the role of trial hearing division or Lower Board was the requisite appellee.
In any event, in this apparently first appeal before the Board under the new Governmental Reorganization Act (Ch. 69-106), there was failure to hear Relator, an aggrieved party. But this failure should not be visited upon appellants to the point of vitiation of their appeal as to the merits. Correction ,of the error lies — as explained below — in Affording a “due process” hearing to all parties anew and not a one-sided disposition, of the case — merits and all— because of procedural error.
Although I construe the Board’s failure to measure up to due process procedural requirements to warrant, by way of mandamus relief, the vacating of the Board’s *681 reversal order, it does not follow that Relator is thereby entitled to mandamus relief in the form of requiring the issuance of a license to operate pursuant to the allocation plan of the Racing Commission. As to the latter right of Relator, I think this case is quite similar to State ex rel. Weathers v. Davis, supra. In Davis, a case involving the revocation of a physician’s license by the Board of Medical Examiners without a hearing, we held that mandamus is available to require the cancellation and expunging from the record of an order, decree or judgment which has been entered without authority of law or without jurisdiction for the entry of such order, judgment or decree. However, to the extent the alternative writ in that case sought reinstatement of the license of the physician involved, this Court held it to be too broad, stating:
“When the order of June 15, 1925 is held void for the reasons hereinbefore stated and is ordered revoked and expunged, then the Relator will stand as he was prior to the entry of that order and the rights of the respondent to proceed under the statute will exist the same as if those former proceedings in which that order was entered had not been instituted.” (At 488.)
Generally when an administrative decision is set aside by a court because of procedural invalidity or lack of fair hearing, it is remanded to the agency for reconsideration pursuant to appropriate procedures. See 2 Am.Jur.2d Administrative Law, ¶ 761 and 765; 1 Fla.Jur., Administrative Law, ¶ 224, 225, 226, 227. See Anderson v. Jarrell (1946), 157 Fla. 212, 25 So.2d 490. I believe similar reasoning is called for in the present case. Once it is determined that Relator is entitled to require by mandamus the cancellation and expunging from the record of the appellate order of the Board because of the above-mentioned procedural infirmities, the better view would be to relegate Relator, Respondent, and the appellant race tracks to the position occupied by them prior to the commission of the procedural defect, rather than granting relief which would by its nature preclude the Board from properly and correctly discharging the duty entrusted to it by statute. I do not find that the procedural defects in the appeal process in this matter necessarily require us to conclusively sustain the Racing Commission’s decision and thereby preclude the appellant race tracks from being afforded an administrative appeal on the merits by the Board of Business Regulation. The view I take herein, being oriented toward the purpose of preserving the function of the Board, is especially warranted in situations where the appellate determination entrusted to the Board is not primarily of an adversary nature but is enshrined with a public trust and policy as well. For example, compare the appellate function of the Florida Industrial Commission, by nature primarily adversarily oriented, with the appellate function of the Board of Business Regulation in this case, i. e., review the allocation of racing dates so as to preserve the State’s as well as the private sector’s interest.
Support for the above approach for ferreting out mandamus relief in cases such as the present situation derives considerable support from Part III of the Administrative Procedure Act, F.S. Chapter 120, F.S.A. This part of the act provides for judicial review of administrative rulings and proceedings. F.S. Section 120.31(1), F.S.A. provides for certiorari review to the District Courts of Appeal as an alternative method of judicial review. Section 120.31(2) provides that in cases where cer-tiorari is granted, the court may remand the cause for such other proceedings as may seem necessary and proper:
“(a) To accord the parties due process of law;
(b) To establish a sufficient record, for review;
*682 (c) To accord the parties their constitutional, statutory or procedural rights; and
(d) To accomplish the purposes and objectives of the law pursuant to which, the administrative proceeding was initiated.” (Emphasis added.)
Section 120.31(4) provides that when appropriate, a party may attack an adverse order by mandamus, prohibition or injunction. Since the certiorari method of review authorized by the Act plainly provides an easy cure for the type of defect we are concerned with in the present case, would it not be a strange and unwieldy interpretation of the mandamus section of the same act to not accord it similar flexibility?
For the reasons aforementioned I conclude Relator is entitled by virtue of the contention set out in ground (1) supra to cancellation of the decision of the Board; that appellants before the Board may proceed on remand in the exercise of their right to a review by the Board of the decision of the Racing Commission; and that such review proceedings on remand be so conducted at an early and emergency hearing as to accord Relator and others adversely affected thereby those procedural rights to which they are entitled.
Finally, we come to the second distinctive reason advanced by Relator to support mandamus. Relator argues that the record before the Racing Commission contained competent substantial evidence to support the 52-52 allocation plan on the basis such a plan would produce more revenue for the State of Florida than any other plan. Accordingly, Relator contends the Board abused its appellate discretion by reversing the 52-52 allocation plan and thereby failed to comply with the essential requirements of law. If this contention is borne out by the record before us, I agree that mandamus predicated on this ground would necessitate the relief sought by Relator, i. e., require the issuance of a license to operate pursuant to the 52-52 allocation plan approved by the Racing Commission.
It is well settled in this jurisdiction that mandamus will not be granted where the right to it is doubtful, and that while it may be employed to coerce action, it will not be employed to control action or discretion. See State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission (Fla.1954), 74 So.2d 691; City of Hialeah v. State ex rel. Danels (Fla.App. 1957), 97 So.2d 198. Based on the record before us in this case, it can hardly be said that the Board clearly abused its appellate discretion by reversing the 52-52 allocation plan of the Racing Commission. Relator contends the evidence before the Racing Commission established that the 52-52 allocation plan would produce more revenue for the State than any other plan. The Attorney General has taken the position before us that the action of reversal by the Board of Business Regulation is well taken in that the dog track racing tax revenues of the State will suffer a decrease of more than $1,250,000 if the 52-52 plan prevails. I am not prepared at this juncture to vindicate either position. I merely acknowledge that on the record before us I am unable to find that the Board has clearly abused its discretion so as to warrant mandamus relief in this particular.
In reaching the above conclusion, I am not unaware of Relator’s assertion that it will suffer irreparable injury and damage if it is not allowed to commence operation under the 52-52 plan of the Racing Commission. This fact may indeed be true. However, it cannot elevate Relator to the relief which it seeks. Regardless of the degree and extent of the preparation and reliance undertaken by Relator pursuant to the plan approved by the Racing Commission, such is unimpressive when placed in the perspective that Relator’s acquisition of any interest under the Racing Comtnis *683 sion’s plan was subject to review by the Board of Business Regulation pursuant to Chapter 69-106, the Governmental Reorganization Act. See Sections 6(1) and 16 (3) of the Act.
In accordance with the foregoing, the peremptory writ of mandamus should be issued vacating and cancelling the decision of the Board of Business Regulation but preserving the right of that Board to entertain on remand emergency proceedings for appellate review of the merits of the Racing Commission’s decision, pursuant to the dictates of procedural due process. I would assume that in implementing the writ which I think should issue in this case, the Board would have authority under its procedural rules to issue such stays and other orders as may be necessary to preserve the cause and proceedings before it.